**SANTA FE ENGINEERS, INC., Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Appeal No. 87–1013.**

United States Court of Appeals, Federal Circuit.

May 13, 1987.

· Ronald E. Gilbertson, Kilcullen, Wilson & Kilcullen, of Washington, D.C., argued for appellant. With him on brief, was Walter A.I. Wilson.

E. Kathleen Shahan, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for appellee. With her on brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson. Also on brief, was Haynes P. Haddox and Carl Platt, United States Army Corps of Engineers, Louisville, Ky., of counsel.

Before RICH, DAVIS and SMITH, Circuit Judges.

DAVIS, Circuit Judge.

The questions are whether (a) appellant contractor proved (before the Armed Services Board of Contract Appeals (Board)) the amount of additional costs chargeable to three specific changes made by the Government and (b) appellant had improperly presented to the Board claims broader than the three particular claims that had been certified to the contracting officer. On each issue the Board held against the contractor. We affirm.

I.

In June 1976 Santa Fe Engineers, Inc. (Santa Fe) entered into a contract with the Government for an addition and alterations to Ireland Army Hospital, Fort Knox, Kentucky, for a lump sum price of $28,664,649. The work to be done under the contract included additions to and renovation of the existing hospital buildings, as well as additions to the parking facilities and other work at the site. The contract required completion of the work within four years from the date (July 26, 1976) Santa Fe acknowledged receipt of the Government's notice to proceed. The work was to be done in phases and was completed in July 1981.

This case started with three changes issued by the Government, designated "AD," "CD" and "HK." Santa Fe ultimately certified to the contracting officer a claim for these three changes of over ten million dollars for increased impact costs due to the changes (later reduced to about five million dollars). The contracting officer allowed only slightly over $166,000 on the three claims.

Santa Fe appealed to the Board asserting that the labor impact of the three changes was far more extensive (amounting to almost five million dollars) than the contracting officer had allowed. The Board held a hearing, made extensive findings, and then determined that (1) appellant had made only a "total labor cost presentation" to the Board, acknowledging that it could not identify any particular impact associated with the three particular changes, (2) the Board thus had no basis for awarding any additional sum on any of the three specific changes before it, and (3) the Board had no jurisdiction over Santa Fe's additional general claim for its total increase in costs because that general claim had never been presented or certified to the contracting officer. *Santa Fe Engineers, Inc.,* ASBCA Nos. 28058 and 29362, 86–3 BCA (CCH) ¶ 19,092 at 96,496. Petitioner's major contention before us is that it did not urge, before the Board, any different claim than the one it had certified to the contracting officer.

II.

■ The record clearly sustains the Board's determination that Santa Fe made no effort to prove the additional impact costs due to the three particular change orders appealed to the Board, but instead sought to show its total labor costs. Finding 39 finds: "Evidence was submitted by appellant to the Board as to the labor costs *incurred for the entire work,* and as to the amounts to be deducted from such expenditures on account of 'bid estimate labor,' payments made for 'change order labor' and 'extended overhead labor,' and other credits" (emphasis added). 86–3 BCA at 96,507. Above all, Santa Fe's proposed findings of fact (before the Board) stated (under the heading "NATURE OF THE CLAIM—TOTAL JOB DISRUPTION"):

The claim of Santa Fe Engineers and its subcontractors is a total cost impact claim for a loss of labor efficiency. This is a claim which represents the total impact to the project from both Change

Orders "CD" and "HK" *and from the collective nature of all the problems, changes and directives that were issued on the project.* (Tr. 1–140) *A multiplicity of change orders were issued at Fort Knox to resolve and to correct problems, and the problems are what the claim is based on.* (Tr. 11–65) *Santa Fe and its subcontractors submitted a total labor cost claim for inefficiencies because there was no way to quantify the impact from any individual change on the project.* (Tr. 2–135, 136, 187) (Emphasis added.)

86–3 BCA at 96,507.

Later on in its proposed findings, appellant explicitly said: "It was not possible to identify any particular impact associated with any particular change. That is why Santa Fe Engineers ended up utilizing a total labor cost approach to its impact claim." *Id.*

Obviously, there was more than substantial evidence sustaining the Board's findings as to the deficiencies of Santa Fe's case before the Board on the extra costs attributable to the three specific change orders.

### III.

The next, and more significant, issue is whether Santa Fe's general presentation was beyond the claims certified to the contracting officer and therefore beyond the Board's authority to consider. It is now elementary that, for claims (such as those now before us) brought under the Contract Disputes Act of 1978,[1] the claim must be in writing and submitted to the contracting officer for a decision. 41 U.S.C. § 605(a). If for more than $50,000 (like those we are now considering), the claim must also be certified. 41 U.S.C. § 605(c). "Lack of

proper certification, where required, deprives the contracting officer, the board of contract appeals, and this court (on review) of jurisdiction to proceed on the claim." *Tecom, Inc. v. United States,* 732 F.2d 935, 937 (Fed.Cir.1984). To the same effect are *W.M. Schlosser Co. v. United States,* 705 F.2d 1336, 1338–39 (Fed.Cir.1983) and *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1556–57 (Fed.Cir.1983). On appeal to the Board or in a direct access action in the Claims Court, a contractor may increase the amount of his claim, *Tecom,* 732 F.2d at 937–38, but may not raise any *new* claims not presented and certified to the contracting officer. *J.F. Shea Co. v. United States,* 4 Cl.Ct. 46, 54 (1983) (cited with approval in *Tecom, supra*). This is because "the certification requirement applies to submission of claims to the *contracting officer....*" *Tecom,* 732 F.2d at 937 (emphasis in original).

■ Here, the Board expressly found that Santa Fe had improperly urged a new claim on appeal to the Board.[2] There is ample record support for this determination. To show this support, we deal first with the claim Santa Fe actually presented to the contracting officer. That written claim (dated March 11, 1981) sought $10,259,624.72 "for delay and impact costs emanating from Change Order Nos. 37 ("AD") and 102 ("CD")...." The contracting officer's response (dated July 27, 1981) starts out by stating "you claim additional money for delay in impact costs resulting from changes 'AD' and 'CD' under the above referenced contract," and then proceeds to set forth his view of the facts concerning those particular changes. There follows the contracting officer's "ANALYSIS" which he commences as follows: "You contend that as a result of Changes 'AD' and 'CD', you incurred costs in the amount of

1. When it appealed to the Board, Santa Fe elected to proceed under the Contract Disputes Act.

2. The Board opinion said:

It is quite evident, as strenuously asserted by the Government, that the claim developed by appellant before the Board was essentially different from the claims presented by it to the contracting officer as to which the subject appeals were taken.

The claims before the contracting officer pertained only to the amount of additional compensation, if any, to which appellant was entitled for changes 'AD', 'CD' and 'HK.' They did not include one for 'all the problems, changes and directives that were issued on the project,' as was presented to the Board (finding 40).

86–3 BCA at 96,508.

$10,259,624.72," and continues by discussing those two changes; he concludes that nothing additional is due on change "AD" and that on change "CD" only $166,396 more is due. Finally, in the "DETERMINATION" portion of his ruling the contracting officer determines that $166,396 will be paid by the Government on change "CD."

Santa Fe appealed to the Board and initially its claim there was precisely the same type of claim as had been proffered to the contracting officer; its original complaint was specifically directed to changes "AD" and "CD" and the contracting officer's decision of July 27, 1984 thereon (discussed immediately *supra*).[3] No other claims were set forth. Similarly, petitioner's original answers (in October 1982) to the Government's interrogatories restricted the claims to those three changes:

> The disruption and interference which caused the excess labor costs involved here were rooted in two basic areas: (1) Change 'AD' work and impact on unchanged work, and (2) Change 'CD' and 'HK' rescheduling and acceleration. The combined effect of these three changes disrupted the *entire project* from the issuance of Change 'AD' on April 8, 1977 until its completion in 1981 (emphasis in original).

Up to that point, in a word, petitioner's claim was plainly restricted to the three particular change orders we have mentioned ("CD," "AD," "HK") and to those change orders alone.[4]

There followed a period of litigation as to whether Santa Fe had properly certified its claim. In its preliminary opinion of July 31, 1984, the Board decided that the first appeal was inadequate because the certification outstanding at that time had been made only by counsel, not by the company itself. However, the Board ruled (in the same opinion) that the proper certification had been made in Santa Fe's later answers (October 1982) to the Government's interrogatories, and on that basis sustained Board jurisdiction over that certified claim.[5]

When proceedings resumed before the Board on the merits of Santa Fe's certified claim, a profound alteration occurred in the scope of that claim. As we have already indicated (in Part I, *supra*), in its proposed findings of fact submitted to the Board with respect to the hearing, Santa Fe now characterized its claim as "total job disruption" and declared explicitly that its claim represented not only the total impact from change orders "CD" and "HK" but also expressly added: "and from the collective nature of *all* the problems, changes and directives issued on the project.... A multiplicity of change orders were issued at Fort Knox to resolve and to correct problems, and the problems are what the claim is based on" (emphasis added). This addition of a claim arising "from the collective nature of all the problems, changes and directives that were issued on the project" was entirely new and had never been presented to the contracting officer, or certified to him.

The hearing record shows that Santa Fe strenuously sought to prove this new and additional claim before the Board. Not only did petitioner's representatives attribute the claim it was now making before the Board to the collective nature of *all* changes or the multiplicity of change orders or design difficulties unrelated to those three particular change orders on which its original claim was grounded, but such unrelated problems (e.g., the "attic

---

3. Paragraph 11 of that complaint alleged: "Appellant has estimated that the scheduling changes made in 'CD', in conjunction with the extra work required by 'AD', caused substantial losses of efficiency and required extra supervision to be employed, and has claimed those costs as an equitable adjustment for those changes."

4. Before us, Santa Fe points out that its submission of October 1982 (accepted by the Board as a proper certification, *see infra*) referred to the total contract delay. But this was plainly done in connection with the asserted impact of specific changes "AD", "CD" and "HK"—not (as later argued, *see infra*) as due to "the collective nature of all the problems, changes and directives on the project."

5. The issue of whether that October 1982 certification was valid is not before us.

space" and "duct work" problems) were directly brought out as part of petitioner's claim.

■ The upshot is that we have no basis for overturning the Board's decision that Santa Fe's claim for the additional costs attributable to "all the problems, changes and directives that were issued on the project" was not properly before the Board because not a claim previously certified to the contracting officer.

## IV.

For these reasons, we affirm the Board's determinations (1) that Santa Fe had proved no additional costs with respect to changes "AD," "CD" and "HK", and accordingly that Santa Fe was entitled only to the $166,396 awarded it by the contracting officer on those claims, and (2) dismissing all of Santa Fe's other claims argued before the Board.[6]

AFFIRMED.

---

**6.** It is unnecessary for us to reach or consider the Government's alternative argument that all of petitioner's claims are barred by accord and satisfaction.