**AAB JOINT VENTURE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 04–1792 C.**

United States Court of Federal Claims.

Nov. 1, 2005.

Brian Cohen, of Bell, Boyd & Lloyd, Washington, D.C., for Plaintiff.

Shalom Brilliant, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION

DAMICH, Chief Judge.

This case is before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiff seeks to recover increased costs on behalf of its two subcontractors, Rolider, Ltd. ("Rolider") and Biri Barashi, Land Works, Development Infrastructure and Road, Ltd. ("Barashi"), under a construction contract with the U.S. Army Engineer Corps–Europe. In its motion, Defendant requests the Court to dismiss for lack of jurisdiction Plaintiff's claim on behalf of Barashi because it was not certified and presented to the contracting officer

for final decision as required by the Contract Disputes Act for claims exceeding $100,000. *See* 41 U.S.C. § 605(c)(1). Plaintiff asserts that the Barashi claim arises from the same set of operative facts as its certified claim to the contracting officer on behalf of Rolider on December 17, 2003, and hence does not constitute a new claim that needs to be separately certified. For the reasons set forth below, Defendant's Motion to Dismiss is hereby GRANTED.

## I. Background

AAB entered into a contract with the U.S. Army Engineer Corps–Europe ("USACE") on June 5, 2001, to design and construct a storage and logistics base in Elad, Israel for use by the Israeli Defense Force. Compl. ¶ 4, 6. AAB was to complete the project in three years, and was to receive $124,089,176 in compensation. *Id.* ¶ 6. Barashi and Rolider subcontracted with AAB to perform the earthwork operations. *Id.* ¶ 7.

The contract provided technical directions for compaction of controlled fill on subsurface areas and road. *Id.* ¶ 8. In particular, the contract specified that a maximum stone size of 15 cm (approximately 6 inches) should be used, and that fill in the top 1.5 meters should be laid in layers of 20 cm compacted to 98% of the maximum density according to the modified American Association of State Highway and Transportation Officials ("A.A.S.H.T.O.") compaction test. *Id.* ¶ 8–9. Barashi and Rolider based their bids on the assumption that they would be able to use 6 inch stone in the top 1.5 meters of the subgrade. *Id.* ¶ 10. The modified A.A.S.H.T.O. compaction test required for the top 1.5 meters, however, can only be performed with a stone size of 3 inches or less. *Id.* ¶ 11. Therefore, the contract specifications were defective. *Id.* ¶ 12.

On June 25, 2002, AAB submitted RFI No. DC–0011 to the contracting officer, proposing that 6 inch stone be used in the upper 1.5 to 1.7 meters in three areas: (1) open fill area in sector 78; (2) under logistics area building and nontrack vehicle parking areas; and (c) under sheds 8 to 13 in sector 123 and associated nontrack vehicle parking/loading areas. *Id.* ¶ 13. AAB also proposed that the mini-mum required density would be increased from 98% to 100% based on nuclear density test results. *Id.* ¶ 13. For all other fill areas, 3 inch stone would be used in the upper 1.5 to 1.7 meters. *Id.* ¶ 13. USACE accepted AAB's proposal on July 30, 2002, and Rolider and Barashi performed earthwork operations in accordance with RFI No. DC–0011. *Id.* ¶ 14–15.

On December 17, 2003, AAB submitted a certified claim to the contracting officer for an equitable adjustment of $916,895 (which it later revised to $910,873) to cover the additional costs incurred by Rolider as a result of the requirement to use 3 inch fill, rather than the 6 inch fill specified in the contract. *Id.* ¶ 17. The contracting officer failed to issue a final decision within 60 days of receipt of the certified claim. *Id.* ¶ 19.

In its December 21, 2004, complaint, AAB requested compensation in the amount of $1,897,320, pursuant to FAR 52.243–4 (Changes) for the increased costs incurred by its subcontractors as a result of the defective specifications and resulting directive by USACE in response to RFI No. DC–0011. *Id.* ¶ 23. In addition to the previously requested $910,873 on behalf of Rolider, AAB also requested $986,447 to compensate subcontractor Barashi for increased costs to place and compact 3 inch fill in the upper 1.5 meters in all areas except the three designated areas. *Id.* ¶ 21. It is this claim on behalf of Barashi that is the subject of Defendant's motion, as this claim was never submitted to the contracting officer.

## II. Standard of Review

In considering Defendant's Motion to Dismiss pursuant to RCFC 12(b)(1), the Court must accept as true all of Plaintiff's well-pleaded facts alleged in the complaint, and draw all reasonable inferences in the Plaintiff's favor. *Godwin v. United States*, 338 F.3d 1374, 1377 (Fed.Cir.2003); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir. 2000); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998). Plaintiff, however, bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed.Cir.2002); *Reynolds v. Army*

*& Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988).

The jurisdiction of the Court of Federal Claims is "prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461 (Fed.Cir.1998) (citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Fed. Nat'l Mortgage Assoc. v. United States,* 379 F.3d 1303, 1311 (Fed.Cir.2004) (citing *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). The Tucker Act provides:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2) (2000).[1] The United States, therefore, waives its sovereign immunity and gives its consent to be sued by private parties over contract disputes under the Tucker Act. *United States v. Mitchell,* 463 U.S. 206, 215, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

Under the Contract Disputes Act, a contractor may submit a claim against the government relating to a contract to the contracting officer for a decision. 41 U.S.C. § 605(a) (2002). For claims of more than $100,000, the contractor must certify to the contracting officer that

> the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly author-

ized to certify the claim on behalf of the contractor.

41 U.S.C. § 605(c)(1) (2000). A final decision by the contracting officer, or the failure of the contracting officer to render a decision within the specified time period, serves as the basis for appeal to this court. 41 U.S.C. § 609(a) (2002); 41 U.S.C. § 605(c)(5) (2000).

## III. Analysis

Defendant argues that Plaintiff's claim for damages incurred by subcontractor Barashi, which was first introduced in its complaint, does not meet the requirements of 41 U.S.C. § 605 and § 609 because the claim was not first certified and submitted in writing to the contracting officer for consideration. Plaintiff counters that the Barashi claim is not a new claim, but is merely a request for an increase in amount of its properly certified claim that was presented to the contracting officer on behalf of Rolider on December 17, 2003.

This Court does not have jurisdiction over a new claim or a claim of different scope brought by a contractor that was not previously presented and certified to the contracting officer for decision. *Santa Fe Eng'r v. United States,* 818 F.2d 856, 859 (Fed.Cir. 1987). Although a contractor is not precluded from increasing the amount of a claim, a contractor is precluded from presenting a new claim which was not previously presented and certified to the contracting officer. *Id.* at 858; *J.F. Shea Co., Inc. v. United States,* 4 Cl.Ct. 46, 54 (Cl.Ct.1983). A new claim is "one that does not arise from the same set of operative facts as the claim submitted to the contracting officer." *J. Cooper & Assoc., Inc. v. United States,* 47 Fed.Cl. 280, 285 (2000) (citing *Tecom, Inc. v. United States,* 732 F.2d 935, 936–937 (Fed.Cir.1984)); *see also Foley Co. v. United States,* 26 Cl.Ct. 936, 940 (1992); *Cerberonics, Inc. v. United States,* 13 Cl.Ct. 415, 417 (1987). The same set of operative facts has been found where the contractor submits additional evidence pertaining to damages to support the same

---

1. Section 10(a)(1) of the Contract Disputes Act is codified at 41 U.S.C. § 609(a)(1), and section 6 is codified at 41 U.S.C. § 605.

factual claim, *Shea,* 4 Cl.Ct. at 55, or where the claim merely "augments the legal theories" underlying the certified claim. *Cerberonics,* 13 Cl.Ct. at 418–419; *Thermocor, Inc. v. United States,* 35 Fed.Cl. 480, 489–490 (1996). In contrast, the same set of operative facts has not been found where the contractor files a different type of claim from that presented to the contracting officer, *Sharman Co., Inc. v. United States,* 2 F.3d 1564, 1570 (Fed.Cir.1993); *J. Cooper,* 47 Fed. Cl. at 285–286; *Metric Constr. v. United States,* 44 Fed.Cl. 513, 518–519 (1999); *Spirit Leveling Contractors v. United States,* 19 Cl.Ct. 84, 91 (1989), or where the facts require different kinds of proof. *Placeway Constr. v. United States,* 920 F.2d 903, 909 (Fed.Cir.1990); *Foley,* 26 Cl.Ct. at 940.

Plaintiff's claim in its complaint requests compensation on behalf of subcontractor Barashi for increased costs to place and compact 3 inch fill in the top 1.5 meters of the subgrade as a result of USACE's directive in response to RFI No. DC–0011. Compl. ¶ 21. It is Plaintiff's position that the Barashi claim need not be separately certified because it arises from the same set of operative facts as the certified claim which AAB presented to the contracting officer on behalf of Rolider on December 17, 2003. However, the party to be compensated, the factual basis, and the proof required for the Barashi claim is different from that for the certified Rolider claim.

In a breach of warranty dispute relating to infected sheep purchased from the Department of Agriculture, claims for seventeen sheep failed for lack of jurisdiction before this court because they had not been certified to the contracting officer, even though a claim for another sheep had been presented and certified. *Dodson Livestock Co. v. United States,* 42 Fed.Cl. 455, 461 (1998). Similarly, while here a certified claim has been presented to the contracting officer on behalf of Rolider, no such certified claim has been presented on behalf of Barashi. The two claims present different factual issues including: the location on the site where each of the subcontractors performed its earthwork operations; the extent that each relied on the contract specifications in preparing its bid;

the impact of USACE's response to RFI No. DC–0011 on its operations; and the ultimate effect on the cost of its operations of the change in the fill size and compaction requirements. Although there is a common factual thread in that the directive by USACE in response to RFI No. DC–0011 was the cause of both claims, "that does not necessarily mean that each claim involves proof of a common or related set of operative facts." *Placeway,* 920 F.2d at 909. Here, the factual evidence and proof required for Barashi's claim for increased costs is entirely different from that required for Rolider's claim for increased costs, and therefore the two claims do not arise from the same set of operative facts.

■ Moreover, there is no allusion to the increased costs of Barashi's operations in AAB's original certified claim on behalf of Rolider, which "would have alerted the contracting officer" that Barashi's claim was part of Rolider's claim. *Am. Renovation & Constr. Co., Inc. v. United States,* 45 Fed.Cl. 44, 51 (1999). The purpose of the certification requirement is to force contractors to use specificity in the claim that they submit to the contracting officer so that the contracting officer can give the claim full consideration before it goes to the court. *See Tecom,* 732 F.2d at 937; *Dodson Livestock,* 42 Fed.Cl. at 462. The critical test is whether the presentation of the claim directly to the court undermines the scheme of adjudication prescribed by the Contract Disputes Act by circumventing the statutory role of the contracting officer to pass judgment on the contractor's entire claim. *Thermocor,* 35 Fed.Cl. at 489 (citing *Cerberonics,* 13 Cl.Ct. at 418). By first raising the Barashi claim with this Court, Plaintiff has effectively circumvented the role of the contracting officer to render judgment on the increased costs incurred by Barashi as a result of placement and compaction of 3 inch fill in the upper 1.5 meters of the subgrade.

■ Proof of a claim by a prime contractor on behalf of its subcontractor is distinct from proof of a claim by the prime contractor on its own behalf. *Eng'r Demolition, Inc. v. United States,* 60 Fed.Cl. 822, 831 (2004). The claims involve " 'separate contracts, em-

bodying separate obligations, between' different parties." *Id.* (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4408 at 188 (2d ed.2002)). Similarly claims brought on behalf of different subcontractors require different proof. The claim brought by AAB on behalf of Barashi is based on the subcontract between AAB and Barashi, whereas the claim brought by AAB on behalf of Rolider is based on the contract between AAB and Rolider. Different contracts and different factual issues are therefore under consideration in each claim. Neither Barashi nor Rolider can bring the claim against the government directly. The Tucker Act does not provide standing for subcontractors to sue the government for an equitable adjustment under the Contract Disputes Act. *Erickson Air Crane Co. of Wash. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984); *Severin v. United States,* 99 Ct.Cl. 435, 442 (1943). The government consents to be sued only by its contractors, with whom it has privity of contract. *Erickson,* 731 F.2d at 813. The contractor, therefore, may bring a pass-through suit on the subcontractor's behalf only when the contractor is liable to the subcontractor. *Metric Constr. v. United States,* 314 F.3d 578, 581 (Fed.Cir.2002); *E.R. Mitchell Constr. Co. v. Danzig,* 175 F.3d 1369, 1370 (Fed.Cir.1999). At issue in both the Barashi and the Rolider claims, therefore, is AAB's liability to Barashi or to Rolider under their respective subcontracts. In sum, the Barashi claim and the certified Rolider claim are based on different sets of operative facts, and hence the Barashi claim need be independently certified before the contracting officer for a final decision. In the absence of presentation and certification to the contracting officer, this Court lacks jurisdiction of the Barashi claim.

## IV. Conclusion

Defendant's Motion to Dismiss Plaintiff's claim on behalf of Barashi (Compl.¶ 21) for Lack of Subject Matter Jurisdiction pursuant to RCFC 12(b)(1) is hereby GRANTED.