**FOLEY COMPANY, Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 93–5084.

United States Court of Appeals, Federal Circuit.

Nov. 4, 1993.

Seth Price, Shapiro, Fussell, Wedge & Smotherman, Atlanta, GA, argued for plaintiff-appellee. With him on the brief was Connie H. Buffington.

Kirk T. Manhardt, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellant. With

him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Frank Carr, Saul Perloff and Jerusha White, Dept. of Army Corps of Engineers, of counsel.

Before ARCHER, LOURIE and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

The United States appeals the December 16, 1992 judgment of the United States Court of Federal Claims on cross-motions for partial summary judgment that denied the Government's request for an equitable adjustment pursuant to the Variation in Estimated Quantity (VEQ) clause, 48 C.F.R. § 52.212–11 (1992), contained in a contract to close hazardous waste lagoons and awarded Foley Company $212,517.63 plus interest for the removal of sludge in excess of 115 percent of the estimated contract quantity. *Foley Co. v. United States*, 26 Cl.Ct. 936 (1992).* In ruling on the motions, the Court of Federal Claims, rejecting the holding in *Burnett Construction Co. v. United States*, 26 Cl.Ct. 296 (1992), held that the grant of an equitable adjustment under the VEQ clause requires proof of an actual increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity. We affirm.

I

On September 28, 1988, Foley contracted with the Government to close four hazardous waste lagoons at the Lake City Army Ammunition Plant in Independence, Missouri. Foley completely discharged its contractual obligations to reduce the lead content of waste water contained in the lagoons to an appropriate level, to dispose of the treated waste water, to remove and dispose of sludge and contaminated soil, and lastly, to fill, grade and seed the lagoons. This appeal solely concerns the aspect of sludge removal and disposal under the contract.

Foley agreed to remove and dispose of the sludge at the unit price of $308 per ton,

based on an estimated quantity of 6,600 tons. In May 1989, Foley advised the Government that the quantity of sludge requiring removal would exceed the estimated quantity. Instructed by the Government to continue its sludge removal, Foley ultimately removed 23,937.51 tons of sludge.

The Government paid Foley $2,337,720 for the first 7590 tons of sludge removed, representing payment of the contract unit price of $308 per ton for 115 percent of the estimated quantity under the contract. As for the remaining 16,347.51 tons of sludge removed, the Government paid Foley $4,822,515.45, which represented a unit price of only $295 per ton. On February 22, 1991, Foley submitted a properly certified claim to the contracting officer (CO), requesting $212,517.63, the differential between the $295 unit price paid and the $308 contract unit price for the excess 16,347.51 tons of sludge removed.

On March 21, 1991, the CO issued a final decision denying Foley's claim. The CO further determined that the contract's VEQ clause entitled Foley to only $3,780,685, which represented Foley's actual costs plus a reasonable profit for the removal of sludge in excess of 115 percent of the estimated contract quantity. Having already paid Foley $4,822,515.45, the CO demanded a refund of $773,316.45.

On July 23, 1991, Foley filed a complaint with the Court of Federal Claims, asserting entitlement to the full contract unit price of $308 for each ton of sludge removed in excess of 115 percent of the estimated contract quantity. On cross-motions for summary judgment, the Court of Federal Claims held that absent proof that Foley experienced cost savings due solely to the remaining 16,347.51 tons of sludge removed, the Government was not entitled to an equitable adjustment under the VEQ clause. The Government subsequently stipulated that it could not demonstrate that Foley's unit cost for sludge removal decreased solely as a result of the amount removed in excess of 115 percent of the estimated contract quantity. Conse-

---

* This is a companion case to *Shannon v. Clement-Mtarri Cos.*, No. 93–1268, 11 F.3d 1072 (Fed.Cir. Nov. 4, 1993) (table), which the Government appealed in consolidated oral argument before this court.

quently, the Court of Federal Claims entered an order holding that the Government owed Foley $212,517.63 plus interest.

## II

 This court reviews judgments of the Court of Federal Claims to determine whether they are premised on clearly erroneous factual determinations or otherwise incorrect as a matter of law. *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1576 (Fed.Cir.1992). As a matter of law, the grant of summary judgment by the Court of Federal Claims receives *de novo* review by this court. *Confederated Tribes of Colville Reservation v. United States*, 964 F.2d 1102, 1107 (Fed.Cir.1992). The interpretation of regulations which are incorporated into government contracts is a question of law also requiring *de novo* review. *Ingalls Shipbuilding, Inc. v. O'Keefe*, 986 F.2d 486, 488 (Fed.Cir.1993).

## III

The Government argues that the contract's VEQ clause entitles it to an equitable downward adjustment from the contract unit price for the sludge removed in excess of 115 percent of the estimated contract quantity. The VEQ clause provides, in pertinent part:

If the quantity of a unit-priced item in this contract is an estimated quantity and the actual quantity of the unit-priced item varies more than 15 percent above or below the estimated quantity, an equitable adjustment in the contract price shall be made upon demand of either party. The equitable adjustment shall be based upon any increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity.

48 C.F.R. § 52.212–11 (1992). Neither party contends that the language of the VEQ clause is ambiguous. The Government, however, contests the Court of Federal Claims' construction of the phrase "costs due solely to the variation" to limit the availability of equitable adjustments to the circumstances where an increase or decrease in costs occurs due solely to the variation above 115 percent or below 85 percent of the estimated quanti-

ty. In the Government's view, the second sentence of the VEQ clause instead should have been interpreted simply to inform a CO of which quantities' costs must be considered in making an equitable adjustment.

 Contract interpretation begins with the plain language of the agreement. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991). The VEQ clause requires an equitable adjustment to be based upon any increase or decrease in *costs*. The Government's preferred construction, however, requires the establishment of a new unit price for the overrun amounts by an equitable adjustment of the contractor's unit profit, even where the contractor's unit costs remained constant. This interpretation clearly contravenes the plain meaning of the VEQ clause. The express language of the VEQ clause precludes an equitable adjustment based on anything other than the contractor's costs.

In light of the Government's concession that the terms of the VEQ clause are not ambiguous, we need not address the drafters' intent in promulgating the VEQ clause. Even if we were to examine such legislative history, however, we would reject the Government's contention. The 1968 revision to the VEQ clause added the sentence "[t]he equitable adjustment shall be based upon any increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity." The Department of Defense issued explanatory notes with regard to the revision stating that the revision was "to make more explicit that only the quantities which exceed 115%, or are less than 85% of the estimated quantities are subject to adjustment under this clause." Department of Defense, *Armed Servs. Procurement Regs. 1963 Ed. Revision No. 27* III (Apr. 15, 1968). While the notes support the Government's position of a legislative intent to inform a CO of which quantities' costs to consider in making an equitable adjustment, nothing in the notes suggests that the drafters intended an equitable adjustment to be based on anything other than an increase or decrease in the contractor's costs due solely to the variation in quantity. The notes also provide no support whatsoever for interpret-

ing the 1968 VEQ clause revision to mean "[t]he equitable adjustment shall be based upon the contractor's actual costs and a reasonable profit," which is the interpretation the Government asserts as correct.

## IV

In any event, we are not at liberty to adopt the Government's interpretation of the VEQ clause. The United States Court of Claims flatly rejected that interpretation in its decision in *Victory Construction Co. v. United States*, 510 F.2d 1379, 206 Ct.Cl. 274 (1975), which controls the outcome of this case. *See South Corp. v. United States*, 690 F.2d 1368, 1370–71 (Fed.Cir.1982) (adopting decisions of the Court of Claims as precedents binding upon the United States Court of Appeals for the Federal Circuit).

In *Victory*, the Court of Claims granted summary judgment to the contractor, denying the Government an equitable adjustment pursuant to the 1965 version of the VEQ clause contained in the contract at issue, absent a showing by a preponderance of the evidence of "the realization of cost economies attributable to excess volume." 510 F.2d at 1387. The 1965 version of the VEQ clause did not include the sentence contested in the present case. Without the requirement that an equitable adjustment be based upon any increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity, the Government was presented in *Victory* with circumstances more favorable to it than those now before this court. Even so, the Government was unable to persuade the Court of Claims to grant an equitable adjustment. Using the 1968 revision to the VEQ clause to interpret the 1965 version of the VEQ clause at issue, the Court of Claims found no basis in either the 1965 version or 1968 revision to the VEQ clause to allow the Government to reprice the overrun quantities. *Id.*, at 1386.

The Government does not challenge the jurisprudence of *Victory*. Instead, the Government contended before the Court of Federal Claims that the language in *Victory* concerning the 1968 revision to the VEQ clause was dictum. *Foley*, 26 Cl.Ct. at 942–43. Regardless of whether the Court of

Claims' analysis of the 1968 amendment is dictum, the holding in *Victory* unequivocally rejects the notion that the VEQ clause permits replacement of a negotiated unit price with a complete repricing based on actual costs plus a reasonable profit.

The Government also seeks to distinguish *Victory* on the facts of the case. The Government argues that the holding in *Victory* should be limited to situations where a contractor's costs to perform an overrun quantity are inseparable from the contractor's overall costs. The Court of Claims never suggested that the inseparability of such cost information was a basis for its holding. Moreover, nothing in the VEQ clause condones such a limitation on its applicability. Therefore, we reject the Government's attempt to distinguish *Victory* on this point.

The Government also argues that, unlike the present case, the contract at issue in *Victory* did not contain a Pricing of Adjustments clause, 48 C.F.R. § 352.270–4 (1992), which requires the application of contract pricing principles under Part 31 of the Federal Acquisition Regulation in these circumstances. The Pricing of Adjustments clause, however, speaks only to the applicable standards, when costs are a factor, for determining the amount of an equitable adjustment once granted. The clause does not affect the basis for a decision of whether the actual grant of an equitable adjustment under a VEQ clause is appropriate. Therefore, the Pricing of Adjustments clause does not affect the requirement that an equitable adjustment under the VEQ clause be based upon any increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity. As the Court of Federal Claims held, the Pricing of Adjustments clause in the Foley contract "has no application" to the contract interpretation issue of this case. *Foley*, 26 Cl.Ct. at 943.

The Government's other arguments about the potential inequities resulting from the holding in *Victory* that we follow today must also be rejected as irrelevant. The VEQ clause plainly requires an equitable adjustment to be based upon any increase or de-

crease in costs. As the Court of Claims stated in *Victory,* "to undertake the implementation of a totally unarticulated procurement policy, however worthy, would amount to an impermissible overreaching of [the court's] legitimate role." 510 F.2d at 1387. The Government has had 25 years since the 1968 VEQ clause revision and 18 years since the Court of Claims decision in *Victory* to change the VEQ clause, if it so desired, to permit an equitable adjustment to be based upon the contractor's actual costs and a reasonable profit. The Government, not having promulgated such a revision, is bound by the plain meaning of the language of the VEQ clause before this court today.

## V

For the reasons set forth, we affirm the decision of the Court of Federal Claims awarding Foley $212,517.63 plus interest by grant of motion for summary judgment on Count I of Foley's complaint.

*AFFIRMED.*

LOURIE, Circuit Judge, concurring.

I agree with the result reached by the majority because the instant case is not meaningfully distinguishable from *Victory,* a precedential decision by which we are bound. In the absence of this precedent, however, I would have reversed the denial of the government's request for an equitable adjustment under the VEQ clause because I do not agree that the "plain meaning" or "express language" of the clause refers to a change in costs per unit.

The contractor and the government made a bargain respecting a specific estimated quantity, subject to a 15% variation above or below that amount. Anything beyond that is open to equitable adjustment. A change in costs due solely to that variation means the costs of raw material, labor, and other costs incurred solely by the variation, and the equitable nature of the adjustment requires a reasonable profit. Thus, if we were writing on a clean slate, the VEQ clause should be interpreted to require a determination of the net increase or decrease in total cost result-ing from the variation, rather than a change in unit cost.

The parties did not bargain for, nor does an equitable adjustment permit, a windfall such as can occur under *Victory* or the majority's independent interpretation of the clause. *See, e.g., Shannon v. Clement–Mtarri Cos.,* No. 93–1268, 11 F.2d 1072 (Fed.Cir. Nov. 4, 1993) (nonprecedential) ($360/unit contract price awarded despite $15.09/unit cost for excess units). I therefore would affirm only on the basis of the precedential authority of *Victory.*