## J. COOPER & ASSOCIATES, INC., Plaintiff,

v.

## UNITED STATES, Defendant.

### No. 97–839C.

United States Court of Federal Claims.

Aug. 4, 2000.

Karen L. Manos, Allen Cannon III, Howrey, Simon, Arnold, & White, LLP, Washington, D.C., attorney of record for the plaintiff. Linda A. Mayer, Howrey, Simon, Arnold, & White, LLP, Washington, D.C., of counsel.

Lance J. Lerman, Commercial Litigation Branch, Katherine A. Barski, Commercial Litigation Branch, James M. Kinsella, Deputy Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, and David W. Ogden, Acting Assistant Attorney General, United States Department of Justice, attorneys of record for the defendant. Michael K. Cameron, Immigration and Naturalization Service, and Jennifer Brand, Small Business Administration, of counsel.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

In July 1995, the Department of Justice, Immigration and Naturalization Service (INS) took steps to increase its officer corps personnel. In order to recruit the required level of new officers within the time frame specified by the Attorney General, the INS entered into a letter contract on July 25, 1995 with the Small Business Administration (SBA) and the plaintiff, J. Cooper & Associates (JC & A), an SBA Section 8(a) contractor, pursuant to the Small Business Act of 1953, as amended, 15 U.S.C.A. § 637 (West Supp.2000). The contract was for the recruitment of support services. The letter contract contemplated performance of marketing and advertising tasks to increase public awareness of the INS and increase the number of qualified applicants.

Because of the identified urgency of the requirements of the INS, the plaintiff was allowed to begin work immediately under the letter contract. The contract contemplated an indefinite delivery and indefinite quantity contract to be definitized in the future, but not later than October 16, 1995, with the maximum amount authorized for the letter contract to be $250,000.00. On September 30, 1995, the INS executed Modification P000001 to the letter contract, extending the schedule for definitizing the contract and increasing the limitation of government liability to $500,000.00. Upon execution of the letter contract, the SBA informed INS that it had authority to negotiate the definitization of the contract directly with JC & A rather than through the SBA.

The INS issued oral task orders to JC & A throughout July, August, and early September, 1995. JC & A sent the INS invoices for work performed on the project on August 3, September 11, October 5, and November 13, 1995. On August 8, 1995, the INS requested the assistance of the Defense Contract Audit Agency (DCAA) to audit plaintiff's proposed

loaded direct labor rates, indirect rates, and the escalation factor applied to the option year. The INS also requested and received audit assistance on the plaintiff's second, third, and fourth payment requests. On October 20, 1995, the plaintiff was paid an amount which appeared to cover its first invoice. After receiving the audit reports from DCAA, the INS found only portions of the invoices substantiated, and partially paid the plaintiff the remainder due on the invoices.

In a letter dated December 7, 1995, the plaintiff was notified by the INS that plaintiff's accounting system was considered inadequate in certain respects. By letter dated January 22, 1996, the INS expressed continuing concerns regarding the sufficiency of plaintiff's invoices and also was trying to set up a meeting to discuss contract performance issues. The DCAA also was asked to audit plaintiff's proposals for definitization dated July 31, October 1, and November 6, 1995.

In a letter dated February 7, 1996, the DCAA indicated to the INS that they had discontinued the audit on JC & A's proposals, until the contractor supplied adequate cost and pricing data. Later that month, INS officials informed the SBA of the plaintiff's alleged poor performance on the contract. In a letter dated May 16, 1996, the INS informed the SBA that it would not definitize the contract, that the contract would be permitted to lapse, and that JC & A should "prepare a proposal for costs incurred in the performance of the contract." Thus, the INS and JC & A had operated under an undefinitized contract for the entirety of their business relationship.

On June 26, 1996, JC & A submitted a certified claim to the INS contracting officer in the amount of $976,025.04 for "changes, delays, and additional costs incurred . . . as a direct result of the government's actions in awarding, managing, and constructively terminating this contract." On December 9, 1996, the INS contracting officer notified JC & A that the INS was denying the claim in its entirety.

JC & A then filed a complaint in this court containing eight counts. On January 24, 2000, Counts I, II, IV–VIII of the complaint were dismissed without prejudice, to permit JC & A to submit the claims to the INS contracting officer, leaving only a single count (Count III), for damages allegedly caused by the INS for breach of contract through failure to definitize the contract.

The defendant has filed a motion to dismiss the remaining Count III for lack of jurisdiction, arguing that the plaintiff failed to submit Count III to the INS contracting officer, as required by the Contract Disputes Act. 41 U.S.C.A. § 605(a) (West Supp.2000). Although the contracting officer had not yet issued a decision on former Counts I, II, IV–VIII, recently the plaintiff filed another, related lawsuit in the Court of Federal Claims, Case No. 00–323C, which appears to be a reformulated version of the dismissed counts in the earlier lawsuit. Case No. 00–323C was suspended by the court to permit the plaintiff to obtain a final decision on the submitted claims in the complaint from the contracting officer.

## DISCUSSION

The defendant has filed a motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction. Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte*, or on appeal. *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir. 1993), *reh'g denied* (1993); *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed. Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Son Broadcasting, Inc. v. United States,* 42 Fed. Cl. 532, 537 (1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted)).

Pursuant to RCFC 8(a)(1) and the Federal Rules of Civil Procedure 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir. 1997), *reh'g denied* (1997). *Pro se* plaintiffs can be held to less stringent standards than formal pleadings drafted by lawyers. *Boyle v. United States,* 44 Fed.Cl. 60 (1999) (citing *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652, *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972)), *aff'd,* 200 F.3d 1369 (Fed.Cir.2000). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

When deciding on a motion to dismiss based on either lack of subject matter jurisdiction or failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989). If a defendant challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. at 189; *see also Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 747; *Catellus Development Corp. v. United States,* 31 Fed.

Cl. 399, 404–05 (1994). The court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. *Indium Corp. of America v. Semi–Alloys, Inc.,* 781 F.2d 879, 884 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C.A. § 1491 (West Supp.2000). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C.A. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, statutory, or regulatory law. *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir. 1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, "it does not create any sub-

stantive right enforceable against the United States for money damages." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Testan*, 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *see also Saraco v. United States*, 61 F.3d at 865 (citing *Zumerling v. Devine*, 769 F.2d 745, 749 (Fed.Cir.1985)) (citing *United States v. Testan*, 424 U.S. at 398, 96 S.Ct. 948); *see also United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349. For claims founded on a statute or regulation to be successful, "the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. at 607, 372 F.2d at 1009 (1967)); *see also Doe v. United States*, 100 F.3d 1576, 1579 (Fed.Cir.1996), *reh'g denied* (1997).

As noted above, the Tucker Act provides this court with jurisdiction over contracts with the United States. 28 U.S.C.A. § 1491(a)(1). However, Title 28 of the United States Code only grants such jurisdiction to this court after a claim has been made to the contracting officer and a decision has been issued by the contracting officer[1] in accordance with provisions of the Contract Disputes Act, or upon the failure of a contracting officer to issue a decision within the period specified, in which case the claim will be deemed denied and a suit may be commenced in this court. 41 U.S.C.A. § 609 (West Supp.2000). *See* 41 U.S.C.A. § 605(c)(5) (West 1987).

Thus, this court only has jurisdiction over claims that have been submitted to, and denied, or deemed denied, by the appropriate contracting officer. Both parties are in agreement that the June 26, 1996 document

from JC & A to the INS was a certified claim. The issue before the court is whether that same June 1996 claim included the claim reflected in Count III of the subsequently filed complaint, and, thus, was properly presented to the INS contracting officer prior to plaintiff filing its complaint in this court, as required by the Contract Disputes Act.

In Count III of the complaint, plaintiff contends that the INS materially breached its contract with JC & A through failure to definitize it, as promised in the letter contract. Plaintiff claims the alleged damages incurred by JC & A were due to the failure of the INS to definitize the contract.

The June 26, 1996 certified claim letter to the INS contracting officer requested an equitable adjustment for "charges, delays, and additional costs incurred by JC & A as a direct result of the government's actions in awarding, managing, and constructively terminating this contract." The plaintiff also states:

We have prepared this claim essentially as a claim for the costs of a termination of the contract for convenience. However, the claim is made specifically pursuant to the Changes Clause and the Stop Work Clauses of the contract. JC & A claims all of the costs to which it is entitled for the government's actions and inactions in awarding and managing this contract.

The plaintiff stated that it prepared its claim as "a total cost claim" and the worksheets attached to the claim are introduced with the words: "These schedules reflect computations of the amount due to J. Cooper & Associates, Inc., as a result of the apparent termination of the above referenced contract." The INS, in a May 16, 1996 letter, had informed JC & A that the contract would not be definitized, and that JC & A should prepare a proposal for costs incurred in performance.

When submitting a complaint to this court, a contractor "may increase the amount of his claim ..., but may not raise any new claims not presented and certified to

1. Under the relevant portion of the Contract Disputes Act, "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C.A. § 605(a).

the contracting officer." *Santa Fe Eng'rs, Inc. v. United States,* 818 F.2d 856, 858 (Fed.Cir.1987) (citation omitted). The claim submitted to the contracting officer must be one which "gives the contracting officer adequate notice of the basis and amount of the claim. *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir. 1987)." *Hawkins and Powers Aviation, Inc. v. United States,* 46 Fed.Cl. 238, 243 (2000).[2]

A new claim is one that does not arise from the same set of operative facts as the claim submitted to the contracting officer. *See Tecom, Inc. v. United States,* 732 F.2d 935, 936–37 (Fed.Cir.1984); *SMS Data Prod. Group, Inc. v. United States,* 19 Cl.Ct. 612, 615 (1990) (citing *Glenn v. United States,* 858 F.2d 1577, 1580 (Fed. Cir.1988)); *see also Foley Co. v. United States,* 26 Cl.Ct. 936, 940–41 (1992), *aff'd* [,] 11 F.3d 1032 (Fed.Cir.1993); *AAI Corp.[ v. United States],* 22 Cl.Ct. [541,] 545 [(1991)]; *Spirit Leveling[ v. United States],* 19 Cl.Ct. [84,] 91 [(1989)].

*Id.* In *Hawkins,* the contractor presented a claim to the contracting officer for recovery on a contract that was allegedly entered into on a specific date, which created an express contract. Then the contractor filed a claim in court that was for recovery on a contract that was allegedly "one that evolved over time," creating an implied-in-fact contract which was authorized by ratification. The court found that this could be viewed as a failure to provide adequate notice. *Id.*

In the case at bar, in the claim letter of July 26, 1996, JC & A requested an equitable adjustment of the contract price resulting from changes, delays and other costs resulting from government actions when awarding, managing and constructively terminating the contract. These included costs that were incurred by JC & A in the performance of the contract such as hiring new personnel, renting more office space and the costs for attorneys and consultants hired to assist with the claim letter. The costs were presented as a total cost claim. The claim letter never

raised a breach of contract claim. Meanwhile, Count III in plaintiff's complaint submitted to this court seeks damages for an alleged breach of contract due to a failure to definitize the contract, as a result of which JC & A argues that the INS deprived JC & A of the opportunity to offset costs through future work under the contract. Plaintiff alleges in its complaint that the defendant was required to definitize the contract unless the government exercised its contract termination authority. In the plaintiff's brief in support of jurisdiction submitted on the instant motion, JC & A argues that there was a responsibility on the part of INS either to definitize or to terminate the contract for convenience. Plaintiff alleges that the failure to definitize or to terminate resulted in a breach by INS. The plaintiff argues that when the INS allowed the contract to lapse, it constructively terminated the contract for convenience.

The government responds that the issue of breach of contract has not been presented to the contracting officer and, therefore, is not ripe for consideration by this court. The government also alleges that the contracting officer determined that the letter contract was not terminated for convenience, but had lapsed when not definitized by the deadline.

As reflected in the government contracts standard disputes clause, traditionally, government contract claims may be placed into one of two categories. The first category is for "relief arising under" the contract. *See* 48 C.F.R. § 52.233–1 (1994). This is defined as "a claim that can be resolved under a contract clause." *Id.* The second category of claim reflected in the disputes clause is for those claims "relating to" a contract. *Id.* These are claims that involve the contract, but are not resolved under any contract clause. *See* John Cibinic, Jr. & Ralph C. Nash, Jr., *Administration of Government Contracts* 1239–46 (3d ed.1995) (discussing the differences between contract claims made under remedy granting clauses and breach of

---

**2.** The United States Supreme Court generally has recognized the importance of notice to and review by the relevant agency, before review by the courts. *See United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 36–37, 73 S.Ct. 67, 97

L.Ed. 54 (1952) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts.").

contract claims, in the disputes process). *See generally Mega Constr. Co. v. United States*, 29 Fed.Cl. 396, 415 n. 11 (1993) (discussing the historical difference between these two categories of claims). In the instant case, the claim letter of June 26, 1996 requested relief under several clauses of the contract, specifically: the termination for the convenience of the government clause, the changes clause, and the stop work clause. Therefore, the letter claim was a claim for relief arising under the contract. However, the claim filed in Count III of plaintiff's complaint in this court was not filed under a remedy granting clause, but as a breach of contract claim, relating to the contract.

The termination/changes clause/stop work clause claim, which was presented in the June 1996 letter, did not put the agency on sufficient notice of the breach of contract claim which would subsequently be filed in this court. *See Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d at 592. Without such notice the contracting officer did not have an opportunity to review the breach of contract claim now alleged in this court by the plaintiff.

The plaintiff argues that the cost claim submitted to the contracting officer and the breach of contract claim both derive from the failure of the government to definitize or to terminate the contract. The plaintiff argues that the two claims involve "the same set of operative facts and the same legal theory of recovery" because, according to the plaintiff, "[i]n both instances, JC & A alleges that the government failed to definitize the letter contract and seeks monetary relief." The defendant contends that the plaintiff's assertion is incorrect, because the June 26, 1996 claim letter makes no mention of a breach of contract or of definitization. Defendant is correct. Count III seeks damages for the failure of the government to definitize the letter contract. However, the June 1996 claim letter seeks "costs incurred by JC & A as a direct result of the government's actions in awarding, managing, and constructively terminating this contract." In order to identify to the contracting officer that JC & A was making a breach of contract claim, JC & A would have had to articulate such a claim in the claim letter. The language of the June 1996 claim letter does not mention or even suggest that JC & A seeks damages from the government for a breach of contract for failure to definitize.

Breach of contract claims are not subsumed, or resolved, by final termination claims. When presented with the question of whether a termination claim will subsume all other claims, the Federal Circuit ruled that it will not. *See James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1546–48 (Fed. Cir.1996). In *Ellett*, the court agreed with the plaintiff that "there is no authority in the [Contract Disputes Act] or the [Federal Acquisition Regulations] 'for simply eliminating valid contractor claims by terminating' the contract.'" *Id.* The court in *Advanced Materials, Inc.* ruled that a plaintiff may bring an independent contract claim, in addition to a termination claim, "so long as the plaintiff follows the applicable jurisdictional requirements [of the Contract Disputes Act for] submitting a claim to the [Contracting Officer.]" *Advanced Materials, Inc. v. United States*, 46 Fed.Cl. 697, 701 (2000). JC & A could have included a claim for breach of contract with the termination for convenience/changes clause/stop work clause claim but failed to do so. As noted above, there was no mention in the June 1996 claim letter of any breach of contract for failure to definitize, or any mention of the lack of definitization.

The plaintiff also argues that regardless of the label ascribed, breach versus termination, the claim need not be resubmitted to the contracting officer because the contracting officer already has issued a final decision based on the same operative facts reflected in Count III. Plaintiff cites *Sharman Co. v. United States*, 2 F.3d 1564 (Fed.Cir.1993) in support. The defendant responds that the present case requires the separate presentation of two claims. Since the June 1996 claim letter did not contain any mention of the breach of contract allegations, defendant argues, the breach of contract allegations were not certified as a claim and, therefore, this court is without jurisdiction over Count III. It is, in the defendant's view, a fundamental requirement that the claim presented

in the complaint to a court be included in the claim presented to a contracting officer for the contracting officer to have the opportunity to consider the claim. According to the defendant, without the inclusion of the complaint's breach of contract legal theory, the claim could not have been properly considered by the contracting officer.

In *Sharman*, the plaintiff repudiated a contract for the manufacture of steel water tanks because there was a rise in the price of steel. In response, the government terminated the contract in question. The government then demanded that Sharman return the progress payments previously made. Sharman filed a suit in the United States Claims Court in which it sought conversion of a default termination to a termination for government convenience, as well as a quantum merit award of the progress payments made to Sharman prior to the termination. The United States Court of Appeals for the Federal Circuit stated the unremarkable proposition that the government's counterclaim for the progress payments and the contractor's *quantum meruit* claim for the progress payments were the same claim, albeit under different labels. *Id.* at 1571.

The *Sharman* court, however, did not rule that the default termination claim by the contractor was the same as the progress payments claims. The court stated: "The contracting officer's default termination letter ... could not provide a jurisdictional basis for the government's counterclaim for [the return of unliquidated] progress payments because these two claims are not the same." *Id.* at 1570. Similarly, in the present case, the termination for convenience claim for money pursuant to remedy granting clauses that was submitted to the contracting officer is not the same as the breach of contract claim that is before this court in Count III.

The court recognizes that drawing distinctions regarding overlapping claims to the contracting officer and claims filed in court under the CDA can involve subtle distinctions. In this area, common sense is a useful guide. We also turn to whatever guidance we can gleam from other federal courts, boards of contract appeals, and experts in the field. Among the sources of expertise are the opinions issued by the boards of contract appeals. In one such opinion, the Armed Services Board of Contract Appeals wrote:

> [W]hether a contractor's argument constitutes a new claim or merely an extension of a claim the contracting officer had the opportunity to consider turns upon "whether the matter raised ... differs from the essential nature or basic operative facts of the [contractor's] original claim." ... *Trepete Construction Co.*, ASBCA No. 38555, 90–1 BCA ¶ 22,595 at 113,385, 1990 WL 101600 [(Contractor submitted a claim for delay to the contracting officer and submitted a claim for acceleration to the Board. The Board granted a motion to strike the claim for acceleration because it lacked jurisdiction since the claim had never been submitted to the contracting officer.)]; *accord Santa Fe Engineers*, 818 F.2d at 858–60 [(Contractor submitted three claims for specific changes to the contract performance and the claim submitted to the Board was for all the changes made to contract performance. The Federal Circuit dismissed all of the extra claims presented to the Board.)].

*Laidlaw Envtl. Servs. (GS), Inc.*, ASBCA No. 45365, 93–3 BCA ¶ 26,128 at 129,884, 1993 WL 190378. In *Laidlaw*, the contractor's claim that was presented to the Board was found to have the same operative facts and to be similar in character to the certified claim contractor presented to the contracting officer. The Board found jurisdiction.

In the case currently before this court the essential nature of Count III differs from the essential nature of the claim letter. As reviewed above, the claim before the contracting officer seeks termination for convenience, changes clause, and stop work clause remedies under the contract, while the claim before the court seeks breach of contract damages. The two legal theories presented in the record in this case cannot be viewed as part and parcel of the same claim.

The instant case more closely resembles *SMS Data Prods., Group, Inc. v. United States*, 19 Cl.Ct. 612 (1990). In that case the plaintiff filed a claim for compensatory re-

lief[3] with the contracting officer. Then, the plaintiff filed suit for lost profits from a breach of contract in the United States Claims Court. In *SMS*, the court found that the "[p]laintiff's request for compensatory relief and the [claim before the court] for lost profits necessarily involve[d] different theories of liability." *Id.* at 616. The court found that "[p]laintiff's compensatory damages claim involved proof of circumstances beyond HHS's control which rendered the contract obsolete or impracticable. Plaintiff's lost profits claim, however, involves proof that HHS willfully obstructed performance." *Id.*

Similarly, in the present case the plaintiff filed a claim for termination costs with the contracting officer, while the claim before this court is for breach of contract for failure to definitize the letter contract. The termination costs claim involved liability for "the government's actions in awarding, managing, and constructively terminating this contract." Whereas, the breach of contract claim, in Count III of the case before this court, involves liability from "when [the INS] failed to definitize the contract [as] promised in the letter contract and as required by law." As noted above, the costs sought by JC & A in the claim letter submitted to the contracting officer were those arising from remedy granting clauses under the contract. Such costs include: employees and equipment obtained for the work; work performed but unreimbursed; and legal and other business services for termination. Meanwhile, the costs sought by JC & A in Count III are for breach of contract. In contrast, the plaintiff stated in Count III: "When the agency failed to definitize the contract, it deprived [JC & A] of the opportunity to offset costs through future work under the contract." The costs of the claim letter were associated with the termination of the contract, while the costs of Count III are for lost profits.

### CONCLUSION

Count III of plaintiff's complaint in Case No. 97–839, which alleges that the defendant breached the contract between the parties when it failed to definitize the letter contract, has not been presented to the INS contracting officer for review, as required by the Contract Disputes Act. The defendant's motion to dismiss, is, therefore, **GRANTED.** Count III is hereby **DISMISSED,** without prejudice, in order to provide the plaintiff an opportunity to submit the claim to the appropriate contracting officer for review. All counts of Case No. 97–839C, therefore, have been dismissed, without prejudice, and the case is, hereby, closed.

**IT IS SO ORDERED.**

---

3. The plaintiff's claim before the contracting officer alleged that contract test requirements were unilaterally changed, and that the plaintiff was improperly terminated and excluded from the reprocurement. *SMS Data Products, Inc. v. United States,* 19 Cl.Ct. at 613–14.