ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of --                              )
                                           )
LRV Environmental, Inc.                    )      ASBCA Nos. 58727, 58728
                                           )
Under Contract No. DACW17-02-C-0028        )

APPEARANCE FOR THE APPELLANT:              Jeff H. Eckland, Esq.
                                            Eckland & Blando, LLP
                                            Minneapolis, MN

APPEARANCES FOR THE GOVERNMENT:            Thomas H. Gourlay, Jr., Esq.
                                            Engineer Chief Trial Attorney
                                           Carolyn J. Fox, Esq.
                                            Assistant District Counsel
                                            U.S. Army Engineer District,
                                            Jacksonville

## OPINION BY ADMINISTRATIVE JUDGE HARTMAN ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

The government moves to dismiss these appeals for lack of jurisdiction on the grounds that they are barred by the six-year statute of limitations set forth in the Contract Disputes Act, 41 U.S.C. § 7103(a)(4)(A), and the requirement an appeal from a contracting officer's (CO's) final decision to this Board be made within 90 days of the receipt of the CO's decision. Appellant asserts it submitted its claims within six years of accrual and thus is not barred from pursuing them, and that the earlier decision of the CO was not final because it was reconsidered by the CO and thus not required to be appealed within 90 days of appellant's receipt of the earlier decision. The government alternatively moves for summary judgment on the ground the parties' contract provides that contract line item numbers (CLINs) with unit pricing will be paid based upon actual quantities. Appellant cross-moves for summary judgment arguing the parties' "fixed-price" contract provides for payment of the unit price for the estimated quantities when the actual quantity is within 15 percent of the estimated quantity.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

In September of 2002, the Jacksonville District of the United States Army Corps of Engineers (Corps) awarded a contract, No. DACW17-02-C-0028, in an amount

exceeding $1.5 million to appellant LRV Environmental, Inc. (LRV) to perform work at San Juan Harbor, La Esperanza Peninsula, Cataño, Puerto Rico, described as follows:

> The project modifications will include the dredging of a flow channel through the peninsula and the removal, by dredging, of the tip of the peninsula. The required dredging depth will be -3 feet N.G.V.D and the total quantity of material to be dredged will be approximately 51,000 cubic yards. All dredged material will be placed in a cove located along the interior shoreline of the peninsula. The required final elevation of the material placed in the cove will be between 0.0 feet N.G.V.D. and +1.0 feet N.G.V.D. with a 0.5 foot allowable tolerance below the required elevation. Also required will be the installation of approximately 500 linear feet...of steel sheet pile to stabilize the shoreline of the peninsula.

(R4, tab 4 at 39-41, 474) The contract divided work to be performed into six CLINs, three of which (mobilization and demobilization, endangered species monitoring, and turbidity monitoring) were "LUMP SUM PAYMENT ITEMS" and three of which (clearing and grubbing (CLIN 2), excavation and placement (CLIN 3), and sheet pile (CLIN 6)) were "UNIT PRICE PAYMENT ITEMS" (UPPI) (R4, tab 4 at 390-93).

With respect to CLIN 3, excavation and placement, LRV offered a firm-fixed **unit** price based upon an "ESTIMATED QUANTITY" of 51,000 cubic yards (R4, tab 4 at 216). Pursuant to contract § 01270, ¶¶ 1.2.1.1, 1.2.1.2, and 1.2.1.3, LRV was to be paid its firm-fixed unit price for CLIN 3 for actual quantities required to complete that work. The contract explained that "monthly partial payments will be based on approximate quantities determined by soundings or sweepings performed by the Contractor behind the dredge." (R4, tab 4 at 391-92) It further explained:

> The total amount of material removed, and to be paid for under the contract, will be measured by the cubic yard in place and be determined by the average end area method. The volume computed shall be between the bottom surface shown by soundings taken within 3 weeks before dredging and the bottom surface shown by the soundings taken within 3 weeks after the work specified in each acceptance section indicated on the drawings has been completed. [LRV] shall give 3 weeks advance notice, in writing, to the Contracting Officer's Representative of the need for a pre-dredging

survey or after-dredging survey for final acceptance for each acceptance section.

(*Id.*) Contract § 02325, "DREDGING," ¶¶ 3.4.1, 3.4.2, 3.4.3, reiterated several times that "[t]he material actually removed from the designated areas to be dredged" will "be estimated and paid for in accordance with the provisions contained in...Section 01270" (R4, tab 4 at 526, 534-35).

With respect to CLIN 6, Steel Sheet Piling, LRV offered a firm-fixed **unit** price based upon an "ESTIMATED QUANTITY" of 24,200 square feet (R4, tab 4 at 216). Pursuant to contract § 01270, ¶¶ 1.2.3.1, 1.2.3.2, and 1.2.3.3, LRV was to be paid its firm-fixed unit price for CLIN 6 for actual quantities required to complete that work, i.e., "the number of square feet of installed and painted sheet pile used in the accepted work" (R4, tab 4 at 393).

The parties' contract contained various standard clauses set forth in the Federal Acquisition Regulation (FAR), including FAR 52.211-18, VARIATION IN ESTIMATED QUANTITY (APR 1984); FAR 52.232-5, PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (MAY 1997); FAR 52.236-16, QUANTITY SURVEYS (APR 1984), and FAR 52.243-4, CHANGES (AUG 1987). The first of these clauses, Variation in Estimated Quantity (VEQ), FAR 52.211-18, states in relevant part:

> If the quantity of a unit-priced item in this contract is an estimated quantity and the actual quantity of the unit-priced item varies more than 15 percent above or below the estimated quantity, an equitable adjustment in the contract price shall be made upon demand of either party. The equitable adjustment shall be based upon any increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity.

(R4, tab 4 at 57, 94, 113, 116) The second of these clauses, Payments under Fixed-Price Construction Contracts (Payment), FAR 52.232-5, states in relevant part:

> (a) Payment of price. The Government shall pay the Contractor the contract price as provided in this contract.
>
> (b) Progress payments. The Government shall make progress payments monthly as the work proceeds, or at more frequent intervals as determined by the Contracting Officer [CO], on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the [CO].

3

....

(h) Final payment. The Government shall pay the amount due the Contractor under this contract after—

(1) Completion and acceptance of all work;

(2) Presentation of a properly executed voucher; and

(3) Presentation of release of all claims against the Government arising by virtue of this contract, other than claims, in stated amounts, that the Contractor has specifically excepted from the operation of the release.

(R4, tab 4 at 94-96) The third of these clauses, Quantity Surveys, FAR 52.236-16, states in relevant part:

(a) Quantity surveys shall be conducted, and the data derived from these surveys shall be used in computing the quantities of work performed and the actual construction completed and in place.

(b) The Government shall conduct the original and final surveys and make the computations based on them. The Contractor shall conduct the surveys for any periods for which progress payments are requested and shall make the computations based on these surveys. All surveys conducted by the Contractor shall be conducted under the direction of a representative of the [CO], unless the [CO] waives this requirement in a specific instance.

(c) Promptly upon completing a survey, the Contractor shall furnish the originals of all field notes and all other records relating to the survey or to the layout of the work to the [CO], who shall use them as necessary to determine the amount of progress payments. The Contractor shall retain copies of all such material furnished to the [CO].

(R4, tab 4 at 113-14) The last of these clauses, FAR 52.243-4, Changes, states in relevant part that the CO "may, at any time, without notice to the sureties, if any, by written order designated or indicated to be a change order, make changes in the work within the general scope of the contract" (R4, tab 4 at 116).

4

By letter dated 25 July 2005, the Corps acknowledged completion by LRV of "all required contract works for subject project," and notified LRV that, "since the variation on all quantities covered...fall within the 15 percent allowed" by the VEQ clause, no adjustment would be made in the unit prices bid by LRV. The Corps requested, however, that LRV execute a proposed bilateral contract modification: adjusting estimated quantity set forth in the contract for excavation and placement (51,000 cubic yards) to reflect the underrun quantity actually performed, which it stated was 42,842.5 cubic yards; proportionately adjusting the total contract sums for two lump sum CLINs (turbidity and endangered species monitoring); and stating that "[t]his modification...will be used to determine final payment" under the contract. (R4, tab 5 at 675-76, 680-81) LRV did not execute the proposed contract modification (*see* R4, tab 1 at 2, tab 5 at 672, 680-81).

On 25 May 2007, LRV submitted to the CO a certified claim seeking $5,477,918.88 due to inappropriate total volume dredge determination, contract price adjustment, and the consequences that resulted from such action (R4, tab 5 at 672-73). LRV stated that a price adjustment was "implemented [on progress] Payment Estimate Number #15" pursuant to the "draft modification" that "never was officially completed," the quantity for CLIN 3 (excavation) was "changed to 42,842.50 Cubic Yards" and the "prices" for two lump sum items, CLINs 4 and 5 (endangered species and turbidity monitoring), decreased proportionately, resulting in a contract price reduction of $100,769.11. LRV added one of its subcontractors had claimed payment for excavation of 51,000 cubic yards and prevailed in a suit filed against its Payment and Performance Bond Company, it was now unable to obtain payment and performance bonds, and as a direct result it had suffered economic and business development problems. (R4, tab 5 at 672-73)

In October 2007, the Corps' CO issued a final decision on LRV's claim (R4, tab 5 at 724-29). The CO concluded a credit of $81,575.00 against CLIN 3 based upon an actual quantity performed of 42,842.5 cubic yards "was appropriate and in accordance with the VEQ clause." The CO concluded further that the Corps was not responsible for expenses incurred by LRV relating to the Miller Act lawsuit of its subcontractor and that other damages sought by LRV were for acts sounding in tort, not contract, and thus beyond her authority to pay. The CO, however, did conclude that the Corps' proportionate reduction of lump sum amounts for turbidity and endangered species monitoring were in error because the VEQ clause "applies only to unit-priced items." The CO therefore acknowledged "the lump sum items should remain as bid" and LRV was "entitled to payment for the full amount of th[o]se line items." (R4, tab 5 at 727-28)

On 18 January 2008, LRV filed a notice of appeal of the CO's decision with this Board (R4, tab 5 at 736-43). The appeal was docketed as ASBCA No. 56303 (*id.* at 731-32). Less than one month after submitting its notice of appeal, LRV advised it

was withdrawing its notice (*id.* at 744) and the Board dismissed its appeal as "withdrawn."

By contract Modification No. P00019 dated 13 February 2009, the Corps' CO "unilaterally" modified the parties' contract adjusting estimated quantities set forth for both steel sheet piling and for excavation and placement to reflect the underrun quantities it believed LRV actually performed, which were stated to be 23,683.89 square feet and 42,842.5 cubic yards, respectively. Based upon the unit prices bid by LRV, this resulted in a decrease in the total price of CLINs 6 and 3 of $17,083.27 and $81,575.00, respectively, for a total reduction in contract price of $98,658.27. (R4, tab 1 at 2-3; compl. ¶ 12, answer ¶ 12)

By email dated 2 July 2010, the Corps notified LRV that, in reviewing the contract for close out, it discovered a calculation error in the quantity of excavation actually performed for CLIN 3. It stated that a "quantity of 4,638.5 [cubic yards] was inadvertently omitted in the total calculation." It added that, while the total amount dredged was stated previously (in the CO's decision and contract amendments) as "42,842.5," "[t]he total amount dredged should be 47,481 [cubic yards]." The Corps thus proposed the parties' execution of a contract "modification reflecting a variation in Estimated Quantities in the amount of 4638.5 [cubic yards,] which increases the contract price by $46,385.00." (Gov't mot., attach. 1) LRV did not execute the Corp's proposed contract modification, which LRV asserts also contained a release of claims (compl. ¶ 15; gov't mot. at 3-4).

By letter dated 31 March 2012, LRV submitted to the CO a certified claim in the amount of $98,658.27. LRV alleged the Corps wrongfully applied the VEQ clause to CLIN 3 (excavation and placement) and CLIN 6 (steel sheet piles) to reduce quantities set forth by $81,575.00 (8,157.50 cubic yards x $10.00) and by $17,083.27 (516 square feet x $33.10), respectively. According to LRV, the Corps deducted the difference between **actual quantities performed** and the quantity amounts initially set forth in the contract from the latter amount to incorrectly set forth new quantity amounts to be used with unit pricing to determine payment, i.e., LRV should have been paid for the full contract amount initially set forth at the unit price rather than the unit price multiplied by **actual amounts** for CLINs 3 and 6. (R4, tab 3 at 1-3)

On 20 March 2013, the CO issued a final decision (received by LRV on that same day) granting LRV $46,385.00 (plus interest accrued) for 4,638.5 additional cubic yards of excavated material under CLIN 3. The CO denied the remainder of the claim. (R4, tab 1 at 1-4) In addressing LRV's March 2012 claim, the CO made no mention of LRV's May 2007 claim which was the subject of a decision issued in October 2007 (R4, tab 1). On 17 June 2013, LRV timely sought review by this Board of the CO's March 2013 final decision (R4, tab 2 at 9). Its appeals were docketed as ASBCA Nos. 58727 ($17,083.27 claim under CLIN 6) and 58728 ($81,575.00 claim under CLIN 3) (R4, tab 2 at 5).

6

On 4 September 2013, the Corps paid LRV $40,880.77 for the 4,638.5 cubic yards previously omitted in quantity performed calculation for CLIN 3 (gov't mot., attach. 2). According to the Corps, the payment represents the unit price bid by LRV ($10.00) multiplied by 4,638.5, plus interest, minus an amount required to be withheld as a lien by the IRS.

## DECISION

### I. Motion to Dismiss

The Corps moves to dismiss LRV's appeals for lack of jurisdiction as barred by the six-year statute of limitations set forth in the Contract Disputes Act, 41 U.S.C. § 7103(a)(4)(A). According to the Corps, LRV knew or should have known of the Corps' interpretation of the parties' contract that payment was to be based on "actual quantities" performed on 25 July 2005 when the Corps requested LRV execute a bilateral contract modification adjusting the quantity set forth in CLIN 3 for excavation and placement to reflect the quantity LRV "actually performed," but LRV did not submit its claims until 31 March 2012, over six years and eight months later. (Gov't mot. at 10-12)

LRV opposes the Corps' motion to dismiss on the ground that a claim does not accrue (and the six-year statute of limitations begin running) until (1) the date when all events that fix liability were known or should have been known by a claimant and (2) some injury has occurred. According to LRV, the Corps' interpretation of the contract as requiring payment based on the CLIN quantity actually performed by LRV was not actually applied by the Corps (fixing liability and permitting assertion of a claim) until a date within six years of the assertion of its claims here, allowing pursuit of its claims. (App. opp'n at 4-7)

On 10 December 2014, after the parties had completed their briefing of the Corps' motion to dismiss for lack of jurisdiction, the United States Court of Appeals for the Federal Circuit issued its decision in *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1313 (Fed. Cir. 2014), stating that, while its precedent previously characterized the six-year statute of limitations in the CDA as "jurisdictional," the Supreme Court's recent decision in *Sebelius v. Auburn Regional Medical Center*, 133 S. Ct. 817 (2013), effectively had overruled that precedent. The Federal Circuit held that, under the Supreme Court's bright-line test set forth in *Auburn Regional,* the six-year deadline set forth in the CDA was a claim processing rule coming within the general rule that filing deadlines are not "jurisdictional." *Sikorsky Aircraft*, 773 F.3d at 1320-22. We, therefore, deny the Corps' motion to dismiss these appeals for "lack of jurisdiction" based upon the CDA's six-year filing deadline.

7

The Corps also contends that, "[s]ince the alleged misapplication of the VEQ clause for adjustment of CLIN 0003 was the subject of a previous [CO's] Final Decision, LRV is precluded from raising it again in a second claim." According to the Corps, a final CO's decision was issued on 11 October 2007 stating that the Corps "appropriately applied the VEQ clause," an appeal must be made from such a final decision to the Board within 90 days of receipt, the appeal made was withdrawn by LRV within 30 days of filing, and LRV therefore is barred from appealing the CO's 2007 decision six years later and obtaining "another bite at the apple." (Gov't mot. at 12-13)

In its complaint in these appeals, LRV alleges it "maintained that the [Corps] remained liable for the full fixed price of the [parties'] Contract (i) for [CLIN] 0006 for Steel Piling...including the $17,083.27 that the [Corps] purported to deduct from the fixed price of the Contract for said item by the [2009 unilateral contract] Modification," and (ii) for CLIN "0003 for Dredging Material...[including] the $81,575.00 that the [Corps] purported to deduct from the fixed price of the Contract for said item by [its 2009 unilateral contract] Modification" (compl. ¶ 16). While the Corps contends LRV is attempting to obtain a second "bite at the apple," it was the Corps' CO who in 2010 "reopened" the issue regarding calculation of the quantity of CLIN 3 actually performed by LRV, finding the Corps previously had erred in calculating that quantity with respect to the 2007 decision and 2009 unilateral contract amendment. The CO determined that a "quantity of 4,638.5 [cubic yards] was inadvertently omitted in the total calculation" and, while the total amount dredged was stated previously (in the CO decision and contract amendments) as 42,842.5, "[t]he total amount dredged should be 47,481 [cubic yards]." The CO, therefore, clearly did not view the earlier CO decision as conclusive and binding upon the parties with respect to the Corps' making of final payment under the contract.

The Corps is correct that, to be considered timely, an appeal from a CO's final decision to this Board must be made within 90 days of receipt of the CO's decision. 41 U.S.C. § 7104(a); *Sach Sinha & Assocs., Inc.*, ASBCA No. 46916, 95-1 BCA ¶ 27,499 at 137,042. "However, a CO's decision is not 'final' when such decision is reconsidered." *Zomord Co.*, ASBCA No. 59065, 14-1 BCA ¶ 35,626 at 174,483. As stated in *Johnson Controls, Inc.*, ASBCA No. 28340, 83-2 BCA ¶ 16,915 at 84,170, "[w]here the facts indicate that a [CO's] initial decision was not truly final or that the decision is being reconsidered, the failure to appeal from the decision within the prescribed time period will not defeat th[is] Board's jurisdiction and the contractor's opportunity to be heard on the merits." *Accord Roscoe-Ajax Constr. Co. v. United States*, 458 F.2d 55, 63-64 (Ct. Cl. 1972); *Propulsion Controls Engineering*, ASBCA No. 53307, 01-2 BCA ¶ 31,494 at 155,508.

The CO's reconsideration of the 2007 CO decision here indicates the decision was not truly final. *See Precision Piping, Inc. v. United States*, 230 Ct. Cl. 741, 743 (1982); *Roscoe-Ajax Constr.*, 458 F.2d at 63; *accord CP of Bozeman, Inc.*, ASBCA No. 58533, 13 BCA ¶ 35,452 at 173,854-55; *Sach Sinha*, 95-1 BCA ¶ 27,499 at 137,042. While

8

there are no procedures set forth in the CDA for reconsideration of a decision, it is a well established principle that an administrative agency may reconsider its own decisions. *United States v. Sioux Tribe*, 616 F.2d 485, 493 (Ct. Cl. 1980), *cert. denied*, 446 U.S. 952; *accord Biddle v. United States*, 186 Ct. Cl. 87, 98-99 (1968). Administrative bodies who perform judicial or quasi-judicial functions are not infallible and are deemed to have the right to reconsider a prior decision absent existence of a statute or regulation to the contrary. *Biddle*, 186 Ct. Cl. at 98-99. On the unusual facts of this appeal, we hold that, in reconsidering (and correcting) the Corps' calculation of CLIN 3 quantities performed by LRV, the CO demonstrated that the 2007 decision was not "final" and that the earlier determination is not a bar to LRV obtaining review of the Corps' actions with respect to final payment under the contract in these appeals. We, therefore, also deny the Corps' motion to dismiss these appeals for lack of jurisdiction based upon the CDA's 90-day requirement for submitting an appeal to this Board seeking review of a "final" decision.

II. Cross-Motions for Summary Judgment

Board Rule 7(c) (formerly 5(b)) authorizes us to entertain and rule upon motions for summary judgment. *E.g., J.W. Creech, Inc.*, ASBCA Nos. 45317, 45454, 94-1 BCA ¶ 26,459 at 131,661. The standards set forth in FED. R. CIV. P. 56 guide our resolution of such motions. *Lear Siegler, Inc.*, ASBCA No. 30224, 86-3 BCA ¶ 19,155 at 96,794; *Allied Repair Service, Inc.*, ASBCA No. 26619, 82-1 BCA ¶ 15,785 at 78,162-63. Where both parties move for summary judgment, as here, we evaluate each motion upon its own merits. *McKay v. United States*, 199 F.3d 1376, 1380 (Fed. Cir. 1999); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). We will grant a motion for summary judgment only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to entry of judgment as a matter of law. The burden of demonstrating these elements is upon the party who seeks summary judgment and the non-moving party is entitled to have all reasonable inferences drawn in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1306 (Fed. Cir. 2000); *Comptech Corp.*, ASBCA No. 55526, 08-2 BCA ¶ 33,982 at 168,082.

In its cross-motion for partial summary judgment on liability, LRV contends the Corps incorrectly calculated the payment due it for performing contract work under the terms of the parties' contract. According to LRV, under its "fixed-price" contract, it was to receive $510,000.00 ($10.00 per cubic yard x a quantity of 51,000 cubic yards) for CLIN 3, excavation and placement, and $801,020.00 ($33.10 per square foot x a quantity of 24,200 square feet) for CLIN 6, steel sheet piling. Instead, the Corps calculated the payment owed to LRV as $474,810 ($10.00 a cubic yard x a quantity of 47,481 cubic yards) for CLIN 3, excavation and placement, and $783,937 ($33.10 a square foot x a quantity of 23,683.89 square feet) for CLIN 6, steel sheet piling. LRV asserts: the quantities it actually performed for CLINs 3 and 6 varied by less than 15% from the

9

quantities set forth in the contract; no adjustment was to be made under the VEQ clause unless quantities varied by more than 15%; and the Corps' CO, therefore, acted incorrectly in reducing contract quantities set forth for the CLINs and in applying the VEQ clause with respect to final payment. (App. mot. at 7-18)

In its motion for summary judgment and opposition to LRV's cross-motion, the Corps asserts: the parties' contract specified that it was based upon estimated quantities for CLINs 3 and 6; the CO adjusted the estimated quantities set forth pursuant to FAR 52.243-4, CHANGES (AUG 1987), and the contract's payment provisions (specifying payment for CLINs 3 and 6 was to be made for quantities actually performed) to reflect "actual quantities" LRV performed since actual quantities were less than estimated; the CO did not apply the contract's VEQ clause to CLINs 3 and 6 because the difference between estimated and actual quantities was less than 15%; and, when one reads the contract "as a whole," the CO acted correctly pursuant to contract terms because LRV is not entitled to payment under the contract for units of CLINs 3 and 6 not performed. (Gov't mot. at 16-19; gov't resp. at 5-7)

The parties, therefore, construe the terms of their contract differently and the issue before us is the proper interpretation of the contract terms with respect to payment of the unit-priced CLINs. The proper interpretation of a contract is a "question of law," and amenable to resolution by motions for summary judgment. *Sevenson Environmental Servs., Inc. v. Shaw Environmental, Inc.*, 477 F.3d 1361, 1364 (Fed. Cir. 2007).

We interpret a contract in accordance with its express terms and begin with the plain language of that agreement. *E.g., C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1543 (Fed. Cir. 1993); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991). If the "provisions are clear and unambiguous, they must be given their plain and ordinary meaning." *E.g., United Int'l Investigative Servs. v. United States*, 109 F.3d 734, 737 (Fed. Cir. 1997); *Alaska Lumber & Pulp Co. v. Madigan*, 2 F.3d 389, 392 (Fed. Cir. 1993).

LRV argues the "essential framework for final payment under the Contract is established in the [VEQ] clause," which "sets aside a 30 percent range (from 85 percent of the estimated quantity to 115 percent of the estimated quantity, a/k/a the 'VEQ Buffer') for payment of the fixed contract price." According to LRV, when actual quantities fall within the VEQ Buffer, or when a CLIN is not unit-priced (i.e., lump-sum payment item), "the VEQ Clause provides _no_ authority to adjust the fixed contract price" and the CO is prohibited from making such an adjustment due to lack of contractual authority. (App. mot. at 7-8; app. reply br. at 2-6)

Contrary to the assertion of LRV, however, the plain language of the VEQ clause (which is quoted above) does not set forth the "framework" for payment of CLINs under the parties' contract. The VEQ clause, by its plain terms, simply sets forth a procedure

10

for adjusting a contract's price with respect to unit-priced quantities differing from contract quantity estimates by more than 15%. *See Foley Co. v. United States*, 11 F.3d 1032 (Fed. Cir. 1993); *Victory Constr. Co. v. United States*, 510 F.2d 1379 (Ct. Cl. 1975). Under the VEQ clause, the parties are bound to the contract's unit prices within a specific range (here 85% to 115%) of estimated quantities but, if the actual quantity varies significantly (more than 15%) from the estimated quantity, a party may seek an equitable adjustment in the contract price due solely to the variation in quantity above 115% or below 85% of the estimated quantity. FAR 52.211-18; *see Foley*, 11 F.3d at 1034; *Cosmo Constr. Co. v. United States*, 451 F.2d 602, 616-17 (Ct. Cl. 1971). As the Court of Claims stated, the VEQ clause is the "vehicle for adjusting, with a minimum of haggling, the compensation received by contractors who are called upon in the course of performance to do, within limits, more or less work than could be estimated." *United Contractors v. United States*, 368 F.2d 585, 601 (Ct. Cl. 1966).

When actual quantities cannot be accurately forecast for work to be performed, unit pricing based on estimated quantities is used in construction contracts to evaluate bids, determine an initial contract price, and provide an equitable method of pricing actual quantities of the pay items. When such pricing is used in federal government contracts, a VEQ clause is included in the contract to provide for the pricing of large variations from estimated quantities. *See* FAR 11.702, 36.207, 52.211-18.

Here, there is no dispute that actual quantities for unit-priced CLINs 3 and 6 differed from estimated quantities for the CLINs by *less* than 15%. As a result, there is no reason to reference the VEQ clause, which authorizes an equitable adjustment only if actual quantities exceed estimated quantities by *more* than 15%, in order to determine payment to LRV for unit-priced CLINs under the parties' contract.

Section 01270 of the parties' contract ("Measurement and Payment") sets forth the framework for the payment of unit-priced CLINs. The plain language of ¶ 1.2.1.2 of § 01270 expressly states with respect to CLIN 3 that "[t]he total amount of material removed, and to be paid for under the contract, will be measured by the cubic yard in place and be determined by the average end area method." Further, the plain language of ¶ 1.2.3.2 of § 01270 expressly states with respect to CLIN 6 that "[t]he amount paid for will be the number of square feet of installed and painted sheet pile used in the accepted work." The plain meaning of these words is that LRV is to be paid for the actual "amount of material removed" under CLIN 3 and for actual "sheet pile used in accepted work" under CLIN 6. *See Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 322 (Fed. Cir. 1997) (words of a contract are deemed to have their ordinary meaning). While LRV suggests actual quantities are to be used only with respect to progress payments made to it (app. mot. at 9-11, 16-18), it cites no contract language limiting the use of *actual* CLIN quantities to "progress payments" made and mandating the use of initial *estimated* quantities when it comes time for determining final payment" to be made under the contract. Accordingly, LRV's construction of the contract as requiring

11

unit-priced CLINs be paid by multiplying the unit price by the "estimated" (rather than actual) quantity of the CLINs is contrary to the express terms of contract § 01270. It is well established that a contract is to be construed "as a whole" in a manner which harmonizes all of its provisions. *State of Arizona v. United States*, 575 F.2d 855, 863 (Ct. Cl. 1978); *Laidlaw Environmental Servs. (GS), Inc.*, ASBCA No. 45365, 93-3 BCA ¶ 26,128 at 129,884. A construction which gives reasonable meaning to all parts of an instrument is preferred to one leaving a portion of the instrument useless, inexplicable, insignificant, void, meaningless or superfluous. *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 979 (Ct. Cl. 1965); *A.R. Mack Constr. Co.*, ASBCA No. 49526, 97-1 BCA ¶ 28,742 at 143,464. LRV's construction of the parties' contract would require us to ignore the words of contract § 01270 (measurement and payment) when it comes to final payment under that contract contrary to the rules of contract interpretation.

LRV further asserts that there is no contract provision (other than the VEQ clause) authorizing the CO to adjust the parties' contract to reflect a change in price based on "actual" quantities of unit-priced CLINs, thereby precluding a contract interpretation other than its own interpretation (app. mot. at 8, 11, 24; app. reply br. at 6-14). The parties' contract, however, includes FAR 52.243-4, Changes, which authorizes a CO to make a deductive change in the contract price if an aspect of the contract work set forth is deemed unnecessary and not required to be performed. *See, e.g., S.N. Nielsen Co. v. United States*, 141 Ct. Cl. 793, 795-95 (1958); *CTA, Inc.*, ASBCA No. 47062, 00-2 BCA ¶ 30,947 at 152,761-62.

Since the "actual" quantities of unit-priced CLINs 3 and 6 required were less than the quantities "estimated" to be required for those CLINs, the Corps correctly made an appropriate downward adjustment of the quantities set forth in the contract schedule for those CLINs. Nothing in the parties' contract barred the Corps' action here, which comports with the contract's payment provisions read as a whole under established contract construction principles.

Finally, LRV asserts that: the parties' contract is ambiguous with respect to final payment; LRV's construction of the contract is "reasonable"; and therefore we must construe the contract against its drafter, the Corps (app. mot. at 19-26). A contract is considered ambiguous, however, only if it is susceptible to more than one reasonable interpretation. *E.g., Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999). The contract here expressly provides in its schedule that quantities set forth for unit-priced CLINs are "estimated" and in § 01270 that "actual" quantities for unit-priced CLINs will be used to determine payment of those CLINs. LRV's interpretation of the parties' contract as requiring use of "estimated" quantities to determine payment of unit-priced CLINs requires disregard of several paragraphs of contract § 01270 and is not reasonable. *William F. Klingensmith, Inc. v. United States*, 505 F.2d 1257, 1262 (Ct. Cl. 1974) (interpretation which requires complete disregard of entire paragraphs of contract not normally considered reasonable). We conclude the contract's payment provisions are

susceptible to only one reasonable interpretation and thus do not constitute an ambiguity that must be construed against the Corps. *See, e.g., C. Sanchez & Son*, 6 F.3d at 1544.

CONCLUSION

We deny the government's motion to dismiss the appeal for lack of jurisdiction. We also deny the appellant's motion for partial summary judgment with respect to liability. We grant the government's motion for summary judgment. The appeals are denied.

Dated:  14 July 2015

TERRENCE S. HARTMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 58727, 58728, Appeals of LRV Environmental, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals